Good morning, Your Honors. On the surface, this is a claim construction case in which the terms must be construed as would one of ordinary skill in the art and without importing extraneous limitations. No matter what, the appeal requires remand because of disputed infringement facts. However, if you disagree with ARISTOCRAT on at least the making a wager limitation, then this becomes yet another case in a one-size-fits-all rule that may not be workable for doctrines of indirect infringement and joint infringement. IGT makes a gaming machine for the specific purpose of performing steps accused of infringement. In addition, any downstream joint infringers are bound by a contract to perform the steps of the accused method. At the very least, Your Honors, fact issues on this front also warrant remand. Turning to claim construction, we have two terms on appeal on claim construction. The first, awarding said one progressive prize. IGT does not dispute that this step is performed during normal play and only argues that it's not performed during testing, yet there's no 271E exclusion here and the patents do not distinguish between testing and normal play. Here the district court erred by improperly inserting a requirement for transfer of legal entitlement to the prize. That's nowhere found in the intrinsic record. Instead, aristocrats' construction, presenting a monetary value determined to be due, tracks nicely with the specification. And specifically, the prize quote from the specification, the prize awarded in the jackpot game by the system is a monetary amount. And that's in our blue brief, but also in the record at 37, column four. In addition, figure two depicts the prize awarding algorithm. And specifically at step 27, it says, determine the value of a feature game. And that's at 834 of the record. Let me ask you something about this awarding. The awarding and identifying steps, they essentially refer to the same object. How can it mean something different in one step than it does from the other? Well, Your Honor, they do not refer to the same object. Specifically, the identifying step indicates the type of prize won. And if you look to the specification, it talks about specifically the grand prize, the major prize, the minor prize, and the mini prize. That's at 839 of the record, column seven, lines 20 through 27. But the same language is used in the claim. Said one progressive prize from said plurality of progressive prizes that has been won. And in one, you're saying that it means type of prize. In the other, say you mean it means amount of prize. And yet, the language is precisely the same. Is it not? I think you have to go to the specification to see what identifying means. And identifying is described specifically in the specification as identifying the type of prize. And it tells you exactly what that type of prize is. So you're saying that the specification explains that the use of the same language means different things in different places. Even though the language is identical. Is that what you're saying? Your Honor, the language is not identical because it's using the identifying language, which from the specification describes the prize instead of, instead, and it's different from the limitation of display of awarding the prize. Thank you, Your Honor. So they're different languages. And the spec clearly explains it. So you're saying it's the same prize, but there are two different steps. Yes, Your Honor. Identifying and awarding are two different things that relate to the same prize. Yes, Your Honor. What do you think is the correct definition then of awarding as distinguished from identifying? What does it entail in awarding? I think awarding presents the monetary value. It talks about the amount of the value and the number of the value. And if you look at the specification, it says it's a monetary amount. The prize awarded in the jackpot game is a monetary amount. In addition, it says it's step 27. It's the value of the feature game. Whereas when you talk about identifying the prize, it talks about the type of prize. And in this progressive prize awarding system, there are different prizes. And the different prizes can be identified with different amounts of dollars. Those can be changed in the programming of the system. So the grand prize may be a certain amount at one time, but then it might be changed to a different amount at another time. That's what the distinguishing features are, Your Honor. Am I correct that the awarding step entails, in effect, putting certain credits in a certain place or giving the player certain credits or at least registering the credits somewhere on the machine? Yes, Your Honor. And, in fact, IGT has admitted that it performs that step. For example, IGT says at 2606 of the record, it's in our gray brief at 9, that, quote, figure 9, and that's IGT's machine, shows the credits awarded to the win and credit meters. And in a declaration of IGT's employees, it says, quote, after all credits are awarded in the bonus round and have been added to the win and credit meters, the screen returns to the base game reels. That's also in our gray brief at 9. So it means little more than that there's an indicator someplace that the player has a credit. That doesn't necessarily mean the player has any more money in the player's pocket, right? Well, it does because the credits have been awarded to the win and credit meters, and the win and credit meters give the player the amount of credits that they have been won, and then those, in turn, are translated into a monetary amount when the player catches out. Well, in what respect, then, is the district court's conclusion incorrect, that it entails a transfer of a legal entitlement to a prize? Well, the district court erred by requiring the transfer of the legal entitlement to the prize.  However, it can include the transfer of the legal entitlement, but it doesn't have to be required. I think what's important here, if the court agrees with the aristocrat, you have to remand at least for a determination under testing, but because of IGT's admissions on the limitation is satisfied under any construction, there's a remand here in any event. Are there more questions on? Why don't you move to making a wager? Thank you, Your Honor. Making a wager means carrying out a bet, and that occurs by the gaming machines moving credits from the credit meter to the bet meter. And here, the district court improperly read the language by the player into the limitation. The patentee was clear when he wanted to limit the player action, he so specified. For example, the 215 patent at claim one says activating said user interface by the player. That's at 29 of the record. The patentee specifically removed the activating step when it filed the 603 continuation. And, Your Honors, the claim term here must be interpreted from the perspective of one of skill in the art, and that's someone who has worked in design or development of software in the gaming industry. That's undisputed, and that's at 441 of the record. The ordinary meaning shouldn't confine making a wager to player action. For example, computers make calculations, they make changes to data stored in memory, they make automated stock trades, and in this case, computers make wagers. The specification, as well, is flexible. It was drafted towards a software engineer. It doesn't focus on player activity except in the prior art, except when it's describing the prior art, and the actions are drafted in the passive voice, not limiting towards the actor. Well, let me give you an example. In the specification where you're talking about the algorithm that's used to type the probability of an award to the number of credits bet, the abstract itself talks about credits bet by the player in the game. And there are a couple similar references. How is that not supportive of the district court's claim construction? Well, Your Honor, if you look in the preamble of the claim, the preamble discusses that the player makes a wager amount, and the player puts the money into the machine, and he puts the money in, and then he tells the machine how many credits he wants to bet. After that, the machine makes the wager. And I think it's helpful here to look at... But in the absence of a player, the machine can't do anything. The player starts the action, but the player has to put the money in and identify a wager amount, and that's described in the preamble. Why isn't that making a wager? Because the wager amount, Your Honor, and the making a wager are two different things. But I think it's also helpful to understand how these machines operated in the prior art. In the prior art, when a wager was made, a coin was placed in the machine, and that was that. And now when you put a bill in the machine, it does nothing except put the amount of that bill up on the machine. And after that, nothing happens until the player tells the machine what his wager amount is. But isn't that the making a wager step? Not putting the money in the machine, but indicating the amount to be played. If it is the making the wager step, then the wager amount made by the player up in the preamble and the making the wager must mean the same thing. And that doesn't seem to be correct. Well, the district court addressed that in detail and said that given the language in the preamble, that it was understandable that there was a reference to the word wager amount, but that doesn't necessarily make his conclusion with respect to making a wager step incorrect. Well, Your Honor, it violates the basic notions of claim drafting because making a wager is not defined with a specific Article V, whereas a wager amount up in the preamble should mean that making a wager should be referenced with V because it would refer back up to the wager amount. Well, the preamble is discussing what the problem was in the prior art, but that doesn't necessarily mean that the step as it's defined is identical to that language in the preamble. Your Honor, I disagree. The preamble is not discussing the problem in the prior art. But the preamble is discussing what happens prior to the method steps being performed by the machine. In addition, Your Honor, to the prior art, in the prior art I think you could say that the wager was made by the player, but I think as time has changed, a wager can be made both by the player and by the machine. And I think that's what's going on here.  I think it's improper to read one in. So, Your Honor, if making a wager is not limited to a player, we believe it's not limited to the player, but even if you so hold, you know, IGT has admitted that it makes a wager during testing, and so we need to remand on that issue. IGT said, quote, or it has testimony, quote, where we would get the test money and we would go to the machine and we would play the game just like the customer would. And that's deposition from a casino employee. That's 654 of the record. If there are no more questions on making a wager, I'd like to address joint infringement should it come up. No, you are in, you were about to talk about it. I suppose your discussion of joint infringement will be short, I assume, so. Yes, Your Honor, I apologize. Well, that's all right. I mean, do you want to address it briefly now and we'll give you a couple of extra minutes? That would be terrific. Thanks, Your Honor. All right. So, joint infringement, we're factually and doctrinally different from the prior joint infringement cases. And factually, for direct infringement, the claim requires one machine, one place. It's not done over the internet. And it's, and under the district court's construction, one player that causes the method to operate. And this may not be an appropriate case for joint infringement at all. Doctrinally, if we were in a joint infringement world, we would have a contract. And that's between the casino and the player. And it binds the casino to the player. IGT does not dispute the existence of this contract. That's at red brief 38. So, we satisfy the requirements as clarified by the Akamai case that one party must be bound by the other through contract. In addition, Your Honors, we're factually similar to the McKesson case because we have an indirect infringement situation under 271B or C. And we need to develop that on remand. The district court decided this case on the very narrow joint infringement issue under Muni option. That's at A4 and 10 of the record. Factually, a determination of joint infringement is more confined than prior precedent. Thank you, Your Honors. Very well. We'll give you an extra two minutes for rebuttal. Thank you. And we'll hear from Ms. Maynard. May it please the court. I'd like to just make several points as to why the district court should be affirmed here. First, there's no testing when just the functionality of the machines is run through outside the actual playing environment because there's no wager, there's no award, and there's no gain. So the district court correctly concluded that when the claims require actual money being placed at risk, that's a wager. And then the claims also require in the awarding step that the player actually wins something. And as both the testimony from the casino employees and the testimony from the IGT employees establish in the record, no money is placed at risk when the products are tested. No one wins anything when the products are tested. And Judge O'Malley, I think you hit the nail right on the head when you said that the objects and the identifying and the awarding elements are exactly the same. And they can't have the different meaning that Aristocrat tries to attribute to them, that the identifying word can't carry the weight of replacing the meaning of the object after identifying. And so there would be no meaning to the identifying step if the awarding step were given the meaning that Aristocrat attempts to attribute to it. Suppose that someone were to take one of these, a machine that satisfied all the requirements of the claim, but use it at a Sunday church bingo session in which it was absolutely forbidden to actually use money. So what they did is they substituted slugs and you would get credits and everybody would get excited when they got many credits, but they weren't redeemable for money. But everything else was running exactly the same way. Would that infringe? No, Your Honor. I don't believe it would, although I don't think the answer to that would control the testing hypothetical. But I think no, because there would still be no wager, nothing placed at risk. The district court interpreted wagering the claims at A10 to mean making a bet. There would be no actual betting going on. The district court interpreted game to mean a gambling activity. There would be no actual gambling. And then there would be no actual award. Well, there's a bet in the sense of somebody putting in a slug in Judge Bryson's hypothetical and hoping that they'll get back, you know, 10 slugs and everybody in the church will applaud. There would be in that hypothetical, Judge Lynn, no wager because nothing really put at risk. But even if in that hypothetical you concluded the claim limitations were met, it still wouldn't mean that the testing that the record establishes here would satisfy the claims. The money is taken from the casino cage and put into the machine. That's just like the casino taking it from one pocket and putting it into another. No one's placing any money at risk. No one's wagering anything. So it is even different from the bingo hypothetical. And then there's no award being made. I mean, both the casino employee and the IGT employee testified that no one wins anything during these testings. Also, as to— So in Judge Lynn's hypothetical, the award is the 11 slugs instead of one slug? In other words, you can still win something and get an award if at the end of the day you get more than you put in? If in Judge Bryson's hypothetical, in the bingo game, the player was allowed to take the 11 slugs home, then perhaps he would satisfy the awarding step here. But in the testing situation, as the record shows it, no one is entitled to take anything, no matter what happens as a result of the testing. And so even if the bingo hypothetical would practice some limitations of the claim, the testing in actuality in the record here does not. But why do you have to take anything home if you get credit for it for whatever that credit gives you, whether it's simply a recognition or applause or the opportunity to play more games? Well, if it gives you something that you're entitled to take, then perhaps you would interpret that to be an award within the meaning of the claims. But nothing is given to the IGT employees or the casino employees under the record here. Well, they're given credit. Are they on the machine? The machine increments up, and so it identifies numbers. But no one is awarded anything. So you say it identifies, so it picks up the next to last limitation, but it never picks up the last. It possibly picks up the identifying. It definitely doesn't pick up the award. All right, going to the making a wager, what does legal entitlement mean? Why is that necessary to the claim construction? Well, the legal entitlement construction, Judge O'Malley, goes to the awarding construction, not the making wager. The awarding claim the judge held back to me. Right, I apologize. Okay. But what does that mean, legal entitlement? That you're entitled to – that you actually win something. It's either redeemable by you in cash or for credits, that you've been awarded something. It's the flip side of making a wager, that you've made a wager, you've placed something at risk, and if you hit, you win something. But legal, it once says, vis-a-vis me and you, or if you're the casino or under the law. What does legal mean in that context? I think it means in the context of having a right from whoever's operating the machine, so whoever's practicing that limitation of the claim, to take something away. I have the same question to Judge O'Malley. I mean, you really don't mean a legal right enforceable in court, right? I mean, suppose we have an illegal gambling operation which is going on, and you know perfectly well that you won't be able to enforce any obligations that ensue, but there's an understanding among all the players in the House that these debts will be covered. That'd be sufficient to establish an obligation, right, for purposes of infringement, don't you think? That may be, Your Honor, and I don't think that we need for you to uphold the legal entitlement portion of the awarding step to prevail here. But it just seems to be an odd concept, this legal entitlement. It just introduces a degree of formality that looks inappropriate here. That may be right, Judge Bryson. It may be better to just say the right to win something, the right to take something away, but that, too, doesn't exist. That you've been awarded something in your illegal gambling, or you've been awarded something that you can take away. The employees are not allowed to take anything away when they test the machine's functionality. And so the awarding step isn't met here, even under that interpretation. But even if you have problems with that, there's definitely no wager being made in the testing situation, and that's an alternative reason why the testing doesn't meet the claims. But if I could move to the making of that, I think the district court's analysis is right on the money all the way through, and the court should affirm for the reason the district court said, making a wager is clearly conduct done by the player, not by the casino. Where in the specification do you put that? Clearly, the activating step has to be performed by a player. There's no doubt about that. But where does the making a wager step have to be performed by a player in the spec? Well, I think, first, the claim language indicates that it's made by the player. The preamble says that a player can make a wager. So the preamble anticipates that it's the player that makes the wager. The claim language itself says, making a wager at a particular game machine, which sounds like something done by someone at the machine, not something done by the machine. A later claim, Dependent Claim 3, also talks about where in the step of making a wager includes betting a plurality of credits. And so betting a plurality of credits is, again, something that is done by the player.  So I think, first, when you just look at the claim language itself, it's clear that the player is the one doing the step. But then also the specification does support it, Judge O'Malley. The specification uses place, bet, or play when it's referring to actions by the player. The player betting a single token per line is at A125, column 1, lines 43 to 44. If the player plays 20 credits, A26, column 4, line 19. Player playing multiple tokens, A25, column 1, line 45. So there's lots of places in the specification where it's clear that the player is taking the activity. And then I think if you look at the, well, one, it's important to note, I think, that early on in their preliminary contentions, Aristocrat, before the court issued BMC and Muni Auction, Aristocrat itself interpreted this limitation to be something done by the player. And it only changed its mind on that after this court issued its decision in BMC and Muni Auction. And earlier on in the prosecution history, the claim had been written very differently. It had been written to say allowing the player to bet a plurality of credits. So I think that the district court has properly interpreted the claims. And I don't think we have any kind of joint infringement problem here. There's no conduct here sufficient to hold anyone liable for direct infringement under any of this court's joint conduct jurisprudence. They have belatedly on appeal argued a contract claim. I don't think they should be able to raise that at this point. There's nothing in the record suggesting any kind of contract between the casino and the gamer. At most, we've acknowledged that there's a legal entitlement that the casino must pay if the person wins. But that's a far cry from the kind of contractual relationship envisioned by this court's jurisprudence. I mean, we have an alternative ground, but I would urge the court to affirm for the reasons given by the district court. Thank you. We'll hear rebuttal if Ms. Addy has any rebuttal. Can you address one of the last points made, which is that before we issued Muni Auction and BMC that you were interpreting this claim to have the player making a wager? Yes, Your Honor. First of all, that was an infringement contention, so it was made before we had the source code of their system. However, it's not evidence of claim construction. And in addition, it's not inconsistent with our interpretation that the making a wager limitation shouldn't be limited to player action. It should be weighed with the entirety of the record, Your Honor, that nothing in the intrinsic record limits this to a player step. After that, once we had looked at our declaration and at all the evidence, we understood how the machines work, and that's in accord with the broad definition. It's not specifically refuted by the specification. In addition, Your Honor, I'd like to take a look at the prosecution history, and the claims weren't specifically limited. For example, Claim 1 originally read, allowing the player to bet a plurality of credits for a single play. Well, that language was changed to making a wager, and the language specifically bet a plurality of credits was moved into a dependent claim. Now, the prior art wasn't limited to player action. I mean, the claim wasn't limited to player action because the prior art had player action, so limiting to player action wouldn't make sense. Specifically, making a wager can be either player or machine action, and the district court assumption that the limitation was narrowed is an error, because it's inappropriate to limit a broad definition based on prosecution history that's not clearly limiting. That's the Inverness case, Your Honor. And finally, IGT's assertions that what happens after the claim steps are occurred, such as having to give back the money, is purely something that's between IGT's employees and IGT. It has nothing to do with the claim steps in this case, which are machine steps, or even if you interpret the making the wager to be a player step, it has nothing to do with what happens once the money is paid back. So it simply doesn't make sense as IGT asserts that the awarding isn't occurring, because that's a machine step. It's clearly in the machine process. Thank you, Your Honors. Thank you. The case is submitted.